# PROCEEDINGS FOR THE TRANSFER OF OFFENDERS

# TO OR FROM FOREIGN COUNTRIES

Administrative Office of the United States Courts
Magistrate Judges Division

**February 1997**

## TABLE OF CONTENTS

§ 1.    In General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . `1

§ 2.    Role of the Magistrate Judge . . . . . . . . . . . . . . . . . . . . . . . . . 2
        a.    Appointment of Counsel . . . . . . . . . . . . . . . . . . . . . . . . 2
        b.    Conduct of the Consent Verification Proceeding . . . . . . . . . . 2
        c.    Return of a Transferred Offender . . . . . . . . . . . . . . . . . . . 3

§ 3.    Role of the Attorney General and the Department of Justice . . . . . . . 3

§ 4.    Eligibility of an Offender to Transfer . . . . . . . . . . . . . . . . . . . . 4

§ 5.    Designation of a Magistrate Judge to Serve as a Verifying Officer . . . 5

§ 6.    Arrangements for the Consent Verification Proceeding . . . . . . . . . . 5
        a.    Scheduling and Travel Arrangements . . . . . . . . . . . . . . . . . 5
        b.    Opening a File . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        c.    Consent Verification Form . . . . . . . . . . . . . . . . . . . . . . . 6
        d.    Interpreter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        e.    Recording Equipment . . . . . . . . . . . . . . . . . . . . . . . . . 7

§ 7.    Appointment of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        a.    Factfinding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        b.    Standards for Eligibility . . . . . . . . . . . . . . . . . . . . . . . . 8
        c.    Transfers from the United States under 18 U.S.C. § 4107 . . . . . 8
        d.    Transfers to the United States under 18 U.S.C. § 4108 . . . . . . . 9

§ 8.    Conduct of the Consent Verification Proceeding . . . . . . . . . . . . . . 9
        a.    Record of the Proceeding . . . . . . . . . . . . . . . . . . . . . . . 9
        b.    Interpreter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        c.    Introductory Statement by the Magistrate Judge . . . . . . . . . . . 10
        d.    Placing the Offender under Oath . . . . . . . . . . . . . . . . . . . 10
        e.    Determining the Competency of the Offender to Consent . . . . . 10
        f.    Juvenile Offender . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        g.    Advising the Offender of the Right to Consult with Counsel . . . 11
        h.    Inquiry Regarding Pending Appeals of Conviction or Sentence . 12
        i.    Advising the Offender of the Statutory Conditions of the Transfer
              . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        j.    Execution of the Consent . . . . . . . . . . . . . . . . . . . . . . . 16
        k.    Verification of the Consent . . . . . . . . . . . . . . . . . . . . . . 17

§ 9.    Disposition of the Records  . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        a.    Cassette Tape Recording  . . . . . . . . . . . . . . . . . . . . . . . 17
        b.    Consent Forms and Other Court Records . . . . . . . . . . . . . . 17

§ 10.  Return of a Transferred Offender  . . . . . . . . . . . . . . . . . . . . . . 18

## § 1.    In General

Chapter 306 of title 18 of the United States Code sets forth procedures to implement treaties for the transfer of offenders to or from foreign countries.[1] If a treaty providing for the transfer of offenders is in effect between the United States and another country, an offender[2] may be transferred to the country of which he or she is a citizen or national in order to serve the remainder of his or her sentence.

The United States has entered into bilateral transfer treaties with Mexico (Attachment A), Canada (Attachment B), Bolivia, France, Panama, Peru, Thailand, and Turkey, and has transfer agreements with the Marshall Islands, Federated States of Micronesia, and Republic of Palau. The United States is also a party to the Council of Europe's (COE) Convention on the Transfer of Sentenced Persons (Attachment C). The COE convention could eventually establish offender transfer relations between the United States and 40 COE member states and other countries permitted by the COE to accede to the convention.[3]

---

1.    Act of Oct. 28, 1977, Pub. L. No. 95-144, 91 Stat. 1212 (codified as amended at 10 U.S.C. § 955, 18 U.S.C. §§ 3006A note, 3244, 4100-15, and 28 U.S.C. § 636(g) (1994)).

2.    An "offender" is defined by 18 U.S.C. § 4101(e) as "a person who has been convicted of an offense or who has been adjudged to have committed an act of juvenile delinquency." An offender may be on probation, serving a sentence of imprisonment, or on parole. 18 U.S.C. §§ 4104-4106A (1994). In addition, 10 U.S.C. § 955 provides that any offender against the Uniform Code of Military Justice (chapter 47 of title 10) and any prisoner belonging to the United States armed services who is confined by order of a foreign court may also be transferred.

3.    The following countries are parties to the COE convention: Austria, Bahamas, Belgium, Bulgaria, Canada, Croatia, Cyprus, Czech Republic, Denmark, Finland, France, Federal Republic of Germany, Greece, Hungary, Iceland, Ireland, Italy, Luxembourg, Malta, Netherlands and Netherlands Territories, Norway, Poland, Portugal, Slovak Republic, Slovenia, Spain, Sweden, Switzerland, Trinidad and Tobago, Turkey, Ukraine, United Kingdom and United Kingdom Territories, and the United States. France usually prefers to proceed under its bilateral treaty with the United States, while Canada allows the use of either the COE convention or its bilateral treaty with the United States.

All such transfer treaties require the consent of the offender and in most cases[4] the approval of both countries[5]. Prior to each transfer, a United States magistrate judge or other officer[6] must verify that the offender voluntarily consents to the transfer with full knowledge of the consequences thereof.

## § 2.    Role of the Magistrate Judge

### a.    Appointment of Counsel

An offender has a statutory right to the advice of counsel in a proceeding to verify his or her consent to transfer.[7] If requested to appoint counsel, the magistrate judge shall do so if the magistrate judge determines that the offender is financially unable to obtain counsel.[8] (See section 7, *infra*.)

### b.    Conduct of the Consent Verification Proceeding

The Federal Magistrates Act was amended in 1977[9] by adding the following subsection, presently designated as 28 U.S.C. § 636(g):

> A United States magistrate may perform the verification function required by section 4107 of title 18, United States Code. A magistrate may be assigned by a judge of any United States

---

4.    The treaty with Panama, however, does not require the consent of Panama to the transfer to the United States of certain United States military personnel, etc., convicted in Panama prior to October 1, 1999.

5.    *See Rosado v. Civiletti*, 621 F.2d. 1179 (2d Cir.), *cert. denied*, 449 U.S. 856 (1980). "The consents contemplated by the Treaty entail much more than simple expressions of the desire to transfer, and the permission to do so. They also include reciprocal representations by each of the parties upon which the others rely in deciding to give their consent." *Id.* at 1199.

6.    In the case of an offender transferring from the United States to a foreign country, the verification must be performed pursuant to 18 U.S.C. § 4107 "by a United States magistrate or a judge as defined in section 451 of title 28, United States Code." The consent of an offender to transfer from a foreign country to the United States must be verified pursuant to 18 U.S.C. § 4108 "in the country in which the sentence was imposed by a United States magistrate, or by a citizen specifically designated by a judge of the United States as defined in section 451 of title 28, United States Code."

7.    18 U.S.C. § 4109 (1994).

8.    *Id.*

9.    Pub. L. No. 95-144, § 2, 91 Stat. 1212, 1220 (1977).

District Court to perform the verification required by section
4108 and the appointment of counsel authorized by section 4109
of title 18, United States Code, and may perform such functions
beyond the territorial limits of the United States. A magistrate
assigned such functions shall have no authority to perform any
other function within the territory of a foreign country.

Under 18 U.S.C. §§ 4107 and 4108, a magistrate judge must personally
inform the offender of the conditions of the transfer and determine that the offender
understands and agrees to them. The magistrate judge must then verify that the
offender voluntarily consents to the transfer with full knowledge of the
consequences. [See section 8, *infra*.]

### c.    Return of a Transferred Offender

Pursuant to 18 U.S.C. § 4114, an offender transferred to the United States
may be returned to the country from which he or she had been transferred if the
transfer was not in accordance with the treaty or laws of the United States. A
United States magistrate judge is authorized under § 4114 to issue process and to
conduct the statutory proceedings required for such action. [See section 10, *infra*.]

## § 3.    Role of the Attorney General and the Department of Justice

Section 4102 of title 18 sets forth the authority of the Attorney General of
the United States relating to the transfer of offenders to and from the United States.
The Attorney General has delegated her authority under § 4102 to the Director of
the Bureau of Prisons[10] and to the Assistant Attorney General in charge of the
Criminal Division.[11]

---

10.    The Director of the Bureau of Prisons is authorized "to receive custody of offenders and to
transfer offenders to and from the United States of America under a treaty as referred to
in Public Law 95-144; to make arrangements with the States and to receive offenders from
the States for transfer to a foreign country; to act as an agent of the United States to receive
the delivery from a foreign government of any person being transferred to the United States
under such a treaty; to render to foreign countries and to receive from them certifications
and reports required under a treaty; and to receive custody and carry out the sentence of
imprisonment of such a transferred offender as required by that statute and any such treaty."
28 C.F.R. § 0.96b (1996).

11.    The Assistant Attorney General in charge of the Criminal Division is authorized "to exercise
all of the power and authority vested in the Attorney General under section 4102 of Title
18, U.S. Code, which has not been delegated to the Director of the Bureau of Prisons under
28 C.F.R. 0.96b, including specifically the authority to find the transfer of offenders to or
from a foreign country ... appropriate or inappropriate." 28 C.F.R. § 0.64-2 (1996).

Pursuant to a delegation of authority from the Assistant Attorney General of the Criminal Division,[12] the Office of Enforcement Operations of the Criminal Division reviews the request of each offender to transfer to or from the United States. If the Office determines that the transfer is appropriate under the statute and the applicable treaty, it approves the transfer on behalf of the United States[13] and coordinates arrangements for the consent verification proceeding and transfer.

## § 4.  Eligibility of an Offender to Transfer

Although specific treaty provisions govern the conditions of a transfer between two countries,[14] the following requirements concerning the general eligibility of an offender for transfer have been imposed by statute:[15]

   a.    the offender must be a citizen or national of the country to which he or she will be transferred;

   b.    the offender must consent to the transfer;[16]

   c.    the requirement of "double criminality" must be met;[17]

---

12.    Directive No. 73, 28 C.F.R. 40-41 (1996).

13.    The decision whether to approve transfer is discretionary. *Marquez-Ramos v. Reno*, 69 F.3d 477, 481 (10th Cir. 1995); *Bagguley v. Bush*, 953 F.2d 660, 662 (D.C. Cir. 1991), *cert. denied*, 503 U.S. 995 (1992); *Scalise v. Thornburgh*, 891 F.2d 640, 648-49 (7th Cir. 1989), *cert. denied*, 494 U.S. 1083 (1990).

14.    The conditions of the transfer other than those pertaining to the consent of the offender are exclusively the concern of the countries involved.  "Acceptance by the Receiving State of an offender from the Transferring or Sending State constitutes a binding determination that all conditions precedent required by the treaty and legislation have been satisfied," H.R. Rep. No. 720, 95th Cong., 1st Sess. 28 (1977), *reprinted in* 1977 U.S.C.C.A.N. 3146, 3150-51 [hereinafter House Report]. *Accord* S. Rep. No. 435, 95th Cong., 1st Sess. 18 (1977) [hereinafter Senate Report].

15.    18 U.S.C. § 4100(b) and (c) (1994).

16.    "The offender has such an interest in this condition, that his transfer may occur only with his consent, that he may assert the absence of consent and is not bound by any understandings or agreements by the Parties on this matter." House Report, *supra* note 14, at 28. *Accord* Senate Report, *supra* note 14, at 18.

17.    "[D]ouble criminality means that at the time of transfer of an offender the offense for which he has been sentenced is still an offense in the transferring country and is also an offense in the receiving country. With regard to a country which has a federal form of government, an act shall be deemed to be an offense in that country if it is an offense under the federal

4

d.  once the offender's consent is verified, that consent is irrevocable;

e.  if the offender is under 18 years of age, is mentally incompetent, or is incapable of knowingly and voluntarily consenting to the transfer, consent must be given by a parent or guardian; and

f.  there can be no appeals or collateral attacks upon the conviction or sentence pending at the time of the transfer.

## § 5.  Designation of a Magistrate Judge to Serve as a Verifying Officer

Where a consent verification proceeding is to be held in the United States for the transfer of an offender from the United States to a foreign country, a magistrate judge will be notified by the Department of Justice or the Magistrate Judges Division of the Administrative Office regarding the schedule and arrangements.  Where a magistrate judge is needed to conduct a consent verification proceeding in a foreign country, the Office of Enforcement Operations will notify the Magistrate Judges Division.  The Magistrate Judges Division will select a magistrate judge to serve as a verifying officer.

The authority of magistrate judges to conduct consent verification proceedings under 28 U.S.C. § 636(g) should be set forth generally in the local rules of the district court.[18]  When a magistrate judge is assigned to conduct a consent verification proceeding in a foreign country, the assignment should be set forth in a court order.  A sample order is included as Attachment D.  A copy of the order should be forwarded to the Magistrate Judges Division of the Administrative Office.

## § 6.  Arrangements for the Consent Verification Proceeding

### a.  Scheduling and Travel Arrangements

In the case of verification proceedings held in the United States, a magistrate judge generally has the flexibility to schedule the proceeding within a designated time frame.  A representative from the Bureau of Prisons or from the Department of Justice will coordinate the schedule with the magistrate judge.  The schedule of appointed counsel is also taken into consideration.  The proceeding should be held in a dignified setting, and if practicable, in a federal court building.

---

laws or the laws of any state or province thereof."  18 U.S.C. § 4101(a) (1994).

18.  *See* 28 U.S.C. § 636(b)(4) (1994).

Scheduling and arrangements for verification proceedings held in a foreign country generally will be handled by the Office of Enforcement Operations of the Department of Justice. The Office of Enforcement Operations coordinates the schedule with officials in the foreign country, the magistrate judge, appointed counsel, and the Bureau of Prisons. Although a magistrate judge will need to make travel plans personally, the Office of Enforcement Operations will provide assistance with the itinerary and hotel arrangements. Depending on the circumstances, proceedings in foreign countries might be held in prisons, courthouses, or airports.

When traveling to any foreign country to conduct proceedings, a magistrate judge should have an official passport and any necessary visa. The Magistrate Judges Division should be contacted for assistance in obtaining these documents.

### b.  Opening a File

Upon receiving the names of the offenders approved for transfer from the Department of Justice, the magistrate judge should direct his or her staff or courtroom deputy to open a separate case file for each offender. A magistrate judge docket number or miscellaneous docket number should be assigned for each offender. The verification proceeding should not be docketed by the clerk of court as a district court case.

### c.  Consent Verification Form

The offender's consent and acceptance must be recorded on a form prescribed by the Attorney General.[19] The full name of the offender and the docket number should be placed on each copy of the consent form which the offender is required to sign at the proceeding. It is recommended that the form be prepared in advance and placed in the offender's file for the proceeding. A minimum of three original or certified copies are needed for each offender. [See section 8(j), *infra*.]

---

19.    18 U.S.C. §§ 4107(d) and 4108(d) (1994). The necessary form has been prescribed by the Department of Justice in several versions corresponding to the foreign countries involved and to whether a transfer is into or out of the United States. The form is also available in three languages - English, French and Spanish. There are no specific rules requiring the use of foreign language forms. The Department of Justice has recommended, however, that French or Spanish-speaking offenders sign both the English and the appropriate foreign language forms.

The magistrate judge must bring an official seal to the proceeding to seal each original copy of the consent form.[20]

### d.    Interpreter

For proceedings in the United States, an interpreter may be appointed by the presiding magistrate judge in accordance with 28 U.S.C. § 1827(d). Arrangements for securing an interpreter are generally handled through the clerk of court, who maintains a list of qualified interpreters who have been certified by the Administrative Office.

For verification proceedings held in a foreign country, the Department of Justice will notify the magistrate judge regarding the need for, and the availability of, an interpreter.

### e.    Recording Equipment

The consent verification proceeding must be recorded on suitable sound recording equipment or taken down by a court reporter.[21]  Sound recording will normally be adequate for the purpose.

For proceedings held in foreign countries, the magistrate judge must bring a portable cassette tape recorder and related equipment,[22] including an ample supply of cassette tapes to permit the recording of individual proceedings on separate tapes.[23]

## § 7.    Appointment of Counsel

An offender has the right to the advice of counsel at the consent verification proceeding and the right to the appointment of counsel if he or she is financially

---

20.    28 U.S.C. § 638(c) (1994). The seal of the district court has been prescribed as the seal for magistrate judges' use. [1988] Judicial Conference of the U.S. Rep. 35.

21.    18 U.S.C. §§ 4107(e) and 4108(e) (1994).

22.    To obtain the best recording, the recorder should have the capacity for using two microphones, rather than just the built-in microphone of the machine. The recorder should also be capable of functioning on batteries in case the proper electrical voltage is unavailable at the hearing site. A battery pack with a recharging feature or an ample supply of batteries will also be needed.

23.    To facilitate the maintenance of the permanent records, only one verification proceeding should be recorded on a cassette tape.

unable to obtain an attorney.[24] The magistrate judge is responsible for determining if counsel should be appointed and for making the appointment.

### a.    Factfinding

The determination of whether an offender is eligible for appointment of counsel should be made by the magistrate judge well in advance of the offender's appearance at the verification proceeding in order to permit the offender a sufficient opportunity to consult with counsel. For proceedings held in a foreign country, however, it may not be possible to appoint counsel in advance if insufficient information has been provided to determine the offender's eligibility for appointed counsel prior to the offender's appearance at the verification proceeding.

Generally, when an offender requests the appointment of counsel, the attorney who will be appointed to represent the offender will make an initial visit or otherwise contact the offender and may assist in preparing and submitting the appropriate financial affidavit or request to the magistrate judge. The magistrate judge may obtain additional information if the magistrate judge deems it necessary.

### b.    Standards for Eligibility

An offender is "financially unable to obtain counsel" if his or her net financial resources and income are insufficient to enable the offender to obtain qualified counsel. In determining whether such insufficiency exists, consideration should be given to the cost of providing the offender and his or her dependents with the necessities of life. The determination of eligibility should be made without regard to the financial ability of the offender's family unless the family indicates willingness and financial ability to retain counsel promptly.

Any doubts as to the offender's eligibility should be resolved in the offender's favor.

### c.    Transfers from the United States under 18 U.S.C. § 4107

For verification proceedings conducted in the United States under 18 U.S.C. § 4107, appointment of counsel shall be made in accordance with the Criminal

---

24.    18 U.S.C. § 4109(a) (1994). "The ramifications of the offender's consent to transfer are such that it is imperative he have an opportunity to consult with counsel before final consent to the transfer.... It is not intended to convert the verification into an adversary proceeding." House Report, *supra* note 14, at 38; Senate Report, *supra* note 14, at 26.

Justice Act (18 U.S.C. § 3006A).[25]   Requests for appointed counsel should normally be submitted on CJA Form 23, "Financial Affidavit." Magistrate judges should be familiar with the *Guidelines for the Administration of the Criminal Justice Act* set forth in Section A, Volume VII of the *Guide to Judiciary Policies and Procedures*, as well as any pertinent provisions of the local CJA plan adopted by the district court.

### d.    Transfers to the United States under 18 U.S.C. § 4108

For verification proceedings conducted in foreign countries under 18 U.S.C. § 4108, the appointment of counsel must be made in accordance with regulations prescribed by the Director of the Administrative Office of the United States Courts.[26]   The *Regulations for the Appointment of Counsel and Guardians Ad Litem Pursuant to a Prisoner Transfer Treaty (18 U.S.C. § 4109(a)(2) and (b))* are reproduced in Section B, Volume VII of the *Guide to Judiciary Policies and Procedures*. Requests for appointed counsel are normally submitted on AO Form 273, "Statement of Prospective Transferee."

The regulations provide that the verifying officer should contact the Defender Services Division of the Administrative Office for the designation of counsel (usually an attorney in the staff of a federal public or community defender organization). The verifying officer should appoint the counsel designated by the Defender Services Division. When a federal public or community defender is appointed, the magistrate judge should name the organization, rather than a specific attorney, as counsel, so that last-minute substitutions may be made if necessary.

## § 8.   Conduct of the Consent Verification Proceeding

### a.   Record of the Proceeding

The recording equipment should be tested and preset before initiating the proceeding.

---

25.    18 U.S.C. § 4109(a)(1) (1994).

26.    18 U.S.C. § 4109(a)(2) (1994).

### b.   Interpreter

If an interpreter is to be used, that individual should be placed under oath. The magistrate judge should then advise the offender regarding the role of the interpreter.

### c.   Introductory Statement by the Magistrate Judge

For the record, the magistrate judge should identify himself or herself and give the date, location, and a brief explanation of the nature of the proceeding; *i.e.*, to verify the consent of the offender to transfer, pursuant to the appropriate treaty. The magistrate judge should also identify the other persons present at the proceeding.

### d.   Placing the Offender under Oath

At the outset of the hearing, the magistrate judge should place the offender under oath and then ask the offender to identify himself or herself by stating the offender's full name and the spelling thereof, age and citizenship.

The magistrate judge should inquire further of the offender if there is any indication that the offender is not at least 18 years of age [see section 8(f), *infra*], or is not a citizen or national of the country to which he or she is being transferred, as required by 18 U.S.C. § 4100(b).

### e.   Determining the Competency of the Offender to Consent

During the initial dialogue with the offender, the magistrate judge should make certain that the offender has the necessary mental capacity to understand the proceeding and to consent knowingly to the transfer.

The statute specifically provides for the transfer of an offender who is determined to be mentally incompetent or otherwise unable to consent knowingly and voluntarily to the transfer.[27]  If such an offender is otherwise eligible for transfer, a guardian should be appointed by the magistrate judge to represent the interests of the offender at the verification proceeding and to give consent to the

---

27.   18 U.S.C. § 4100(b) (1994).  Section 4102(9) of title 18 authorizes the Attorney General to make arrangements for the transfer and treatment of individuals who are accused of an offense but who have been determined to be mentally ill.  This provision was intended to supplement those contained in 24 U.S.C. §§ 321-329 which deal with the hospitalization of mentally ill nationals returned from foreign countries.  House Report, *supra* note 14, at 33; Senate Report, *supra* note 14, at 22.

transfer.[28]  Arrangements will generally be made in advance to have a guardian present at the hearing.  The appointment of a guardian ad litem is independent of the appointment of counsel.[29]

As part of the inquiry into the offender's competency, the magistrate judge should ask the offender whether he or she has taken any alcohol, medication or other drugs, or anything else of that nature in the last 48 hours that could affect the offender's ability to understand the proceeding.

Finally, the magistrate judge should ask the offender's attorney if the attorney has any doubts regarding his or her client's mental capacity.

Before proceeding any further, the magistrate judge should make a finding based on these inquiries that the offender is mentally competent to understand the proceeding and to consent knowingly to the transfer.  If the magistrate judge finds that the offender's ability to understand the proceeding is sufficiently impaired, it may be necessary to postpone the proceeding.

f.    Juvenile Offender

The statute provides that if an offender is under the age of 18 at the time of the transfer, the consent to transfer must be given by a parent or guardian or by an appropriate court of the sentencing country.[30]  In such cases, arrangements will generally be made in advance to have a guardian present at the consent verification proceeding.

g.    Advising the Offender of the Right to Consult with Counsel

Before determining that an offender's consent is voluntary and given with full knowledge of the consequences, the magistrate judge shall advise the offender of the right to consult with counsel.[31]  The magistrate judge shall determine whether the offender is satisfied with his or her opportunity to consult with counsel

---

28.    Consent may also be given by an appropriate court in the sentencing country.  18 U.S.C. § 4100(b) (1994).

29.    *Id.*

30.    18 U.S.C. § 4100(b) (1994).  Consent by a court of the sentencing country was included as an option to avoid problems occasioned by a parent or guardian who withholds consent despite the juvenile's desire to transfer. House Report, *supra* note 14, at 29; Senate Report, *supra* note 14, at 18-19.

31.    18 U.S.C. §§ 4107(c) and 4108(c) (1994).

or whether the offender wishes to consult further with counsel before giving consent to the transfer. If the offender wishes to consult with counsel before giving consent, the offender shall be advised that the proceeding will be continued until he or she has the opportunity to do so.[32]

The offender has the right to refuse the assistance of counsel and proceed pro se during the consent verification proceeding.

### h.   Inquiry Regarding Pending Appeals of Conviction or Sentence

An offender cannot be transferred if there is pending litigation concerning the offender's conviction or sentence at the time of transfer.[33] The magistrate judge, therefore, should ask the offender whether there are any such pending or contemplated appeals in his or her case. Pending litigation regarding issues other than conviction or sentence, however, does not affect eligibility for transfer.[34]

In some situations it may be possible for an offender to file an appeal after the consent verification proceeding has been held, but before the offender is transported from the transferring country.[35] After arrival in the receiving country, the offender could challenge the legality of the transfer based on the fact that an appeal was pending at the time of the transfer. In light of this possibility, the magistrate judge should have the offender state for the record that the offender has no appeal or collateral attack pending and that neither the offender nor anyone on his or her behalf will file any such appeal or collateral attack before being transferred. Moreover, the magistrate judge should warn the transferring offender

---

32.   *Id.* For proceedings held in a foreign country, counsel usually visits the offender to discuss the transfer one day prior to the conduct of the verfication proceeding.

33.   18 U.S.C. § 4100(c) (1994). "Both the Mexican and Canadian treaties bar a transfer until the time for appeal has run. [Absent such a specific treaty prohibition,] [h]owever, under subsection [4100](c) it would be possible under future treaties to provide for transfer prior to the expiration of the time for appeal if all parties entitled to appeal waived appeal and the sentence thereby became final." House Report, *supra* note 14 at 29. *Accord* Senate Report, *supra* note 14 at 19. *See also Kanasola v. Civiletti*, 630 F.2d 472, 473 (6th Cir. 1980) (to apply for transfer to the United States to serve his Canadian sentence, "it was necessary for [appellant] to and he did abandon his appeal to the Supreme Court of Canada"), *cert. denied*, 450 U.S. 930 (1981).

34.   House Report, *supra* note 14 at 30; Senate Report, *supra* note 14 at 19.

35.   "The fact that there may be a collateral attack on the sentence does not prevent the offender from being considered for transfer." House Report, *supra* note 14 at 30. *Accord* Senate Report, *supra* note 14 at 19.

that if such an appeal or collateral attack is filed, it could result in the offender's return to the sentencing country.  [See sections 8(i)(3) and 10 *infra*.]

### i.    Advising the Offender of the Statutory Conditions of the Transfer

The magistrate judge must personally inform the offender of the four statutory conditions of the transfer and determine that the offender understands and agrees to them.[36]  The statutory conditions, which are set forth on the consent form, are as follows:

> (1)    only the country in which the offender was convicted and sentenced can modify or set aside the conviction or sentence, and any proceedings seeking such action may only be brought in that country[37];

---

36.    18 U.S.C. §§ 4107(b) and 4108(b) (1994).

37.    The exclusive jurisdiction of the sentencing country over any challenges to the conviction or sentence is set forth at 18 U.S.C. § 3244(1) (1994).  *See Kass v. Reno*, 83 F.3d 1186 (10th Cir. 1996) (court could consider petitioner's claim that he is entitled to release because he received a partial pardon from Mexico, but lacked jurisdiction to consider Bureau of Prison's application of work credits where challenge derived from Mexican Secretary of State's application of Mexican law in "sentencia," a document comparable to a presentence report, relied upon by the Bureau of Prisons to determine appropriate work credits).  In *Rosado v. Civiletti*, 621 F.2d 1179, 1198 (2d Cir.), *cert. denied*, 449 U.S. 856 (1980), the court held that a petitioner "cannot be denied all access to a United States court when he presents a persuasive showing that his conviction was obtained without the benefit of any process whatsoever."  Nevertheless, the court concluded that the petitioners were estopped from challenging the validity of their Mexican convictions in United States courts because they had "voluntarily and intelligently" agreed to accept the jurisdictional limitations as a condition of transfer and there was a "significantly important interest" in holding them to their bargain.  *Id.* at 1199-1201.  *Accord Kanasola v. Civiletti*, 630 F.2d 472 (6th Cir. 1980), *cert. denied*, 450 U.S. 930 (1981); *Pfeifer v. U.S. Bureau of Prisons*, 615 F.2d 873, 876 (9th Cir.) ("[a]n offender's consent to be transferred...is a constitutionally valid waiver of any constitutional rights he or she might have regarding his or her conviction"), *cert. denied*, 447 U.S. 908 (1980); *cf. United States v. Fleishman*, 684 F.2d 1329, 1345 (9th Cir.) ("waiver of their right to challenge the validity of their continued incarceration in this country pursuant to Article VI of the [Mexican] treaty does not prevent [appellants] from challenging the collateral consequences of [their Mexican] convictions"), *cert. denied*, 459 U.S. 1044 (1982).

(2)    the sentence shall be carried out according to the laws of the country to which the offender is to be transferred and that those laws are subject to change;[38]

(3)    if a court in the country to which the offender is transferred should determine upon a proceeding initiated by the offender or on the offender's behalf that this transfer was not accomplished in accordance with the treaty or laws of that country, the offender may be returned to the country which imposed the sentence for the purpose of completing the sentence if that country requests his or her return; and

(4)    the offender's consent to transfer, once verified by the verifying officer, is irrevocable.[39]

The magistrate judge should read each condition separately and explain it to the offender. The magistrate judge should ask the offender if he or she understands each condition.

After explaining the conditions of the transfer to the offender, the magistrate judge should make any further inquiries that may be necessary to determine that the offender fully understands the consequences and conditions of the transfer.

The choice faced by a United States citizen or national in deciding whether to transfer to the United States and accept the jurisdictional conditions of the transfer resembles the choice faced by a criminal defendant who must decide

---

38.    For offenders transferred to the United States, the United States Parole Commission determines a release date so that the foreign sentence can be administered under United States law. 28 C.F.R. § 2.62 (1996), *as amended by* 61 Fed. Reg. 38,569 (1996). *See generally Trevino-Casares v. U.S. Parole Comm'n*, 992 F.2d 1068 (10th Cir. 1993); *Navarrete v. U.S. Parole Comm'n*, 34 F.3d 316 (5th Cir. 1994); *Asare v. U.S. Parole Comm'n*, 2 F.3d 540 (4th Cir. 1993); *Ajala v. U.S. Parole Comm'n*, 997 F.2d 651 (9th Cir. 1993). *See also Powell v. U.S. Bureau of Prisons*, 695 F.2d 868 (5th Cir.) (laws of the United States applied to treatment of work credits after parole revocation), *cert. denied*, 464 U.S. 832 (1983).

39.    "The provision as to irrevocability of consent has been included to avoid the legal problems which would arise if the consent were considered to be revocable as some courts have held with regard to a consent to search or to be questioned. There is no intent to preclude withdrawal of consent by an offender prior to actual transfer." House Report, *supra* note 14, at 29. In *Tavarez v. U.S. Attorney General*, 668 F.2d 805 (5th Cir. 1982), the court held that an offender's initial consent to transfer was sufficient basis for his return to Mexican custody after he had escaped from prison in Mexico and fled to the United States following his transfer to Mexico under the treaty.

14

whether to plead guilty or stand trial.[40]  In this context, the validity of an offender's consent to transfer can be sustained only if it is determined to be "voluntary and intelligent"[41] when "viewed in light of the alternatives legitimately available"[42] to the offender. An offender's acceptance of the jurisdictional conditions of a transfer to the United States has been upheld when the alternative was continued incarceration in a foreign country under brutal conditions.[43]

During the proceeding, an offender might inquire about eligibility for parole or supervised release or state that he or she is transferring with the understanding that certain parole rules or practices will govern the case.  The magistrate judge should inform the offender that the laws of the country to which the offender is transferred will govern eligibility for, and imposition of, parole or supervised release.[44]

Any questions the offender has with regard to the applicability of the law to his or her personal situation should be directed to the offender's attorney.  If necessary, the offender should be given an opportunity to consult with counsel concerning such questions prior to giving consent to the transfer.

---

40.   *Rosado v. Civiletti*, 621 F.2d 1179 (2d Cir. 1980), *cert. denied*, 449 U.S. 856 (1980). "In the plea bargaining context, as in the case [of an offender who wishes to transfer], the choice involves liberty and incarceration on both sides of the equation," *Id.* at 1190.

41.   *Rosado*, 621 F.2d at 1199 (citing *Brady v. United States*, 397 U.S. 742 (1970)). *See also Pfeifer v. U.S. Bureau of Prisons*, 615 F.2d 873, 876 (9th Cir.) ("A valid waiver of constitutional rights must be voluntarily and knowingly made." (citing *McCarthy v. United States*, 394 U.S. 459 (1969))), *cert. denied*, 447 U.S. 908 (1980).

42.   *Rosado*, 621 F.2d at 1191-92 (citing *North Carolina v. Alford*, 400 U.S. 25 (1970)). If they did not agree to the jurisdictional condition, "neither the United States nor New Mexico would have consented to their transfers. If, however, they agreed..., petitioners could escape the brutal conditions of Mexican confinement... In addition, petitioners would gain access to United States courts for all claims unrelated to their convictions or sentences." *Rosado*, 621 F.2d at 1199-1200.

43.   *Rosado*, 621 F.2d at 1199-1200. *See also Mitchell v. United States*, 483 F. Supp. 291, 294 (E.D. Wisc. 1980) ("petitioner argue[d] that... consent was not voluntarily given since he would have agreed to nearly anything to secure his release from the Mexican prison. This fact alone, however, does not vitiate the voluntariness of the consent, since the Constitution does not forbid 'the making of difficult judgments.'" (quoting *McMann v. Richardson*, 397 U.S. 759, 769 (1970))).

44.   18 U.S.C. § 4107(b)(2) (1994); 18 U.S.C. § 4108(b)(2) (1994). *See* 18 U.S.C. § 4106(c) (1994) (transfer to United States of offender on parole for offenses committed before November 1, 1987; 18 U.S.C. § 4106A(b)(1)(A) (1994) (transfer to United States of offender on parole for offenses committed on or after November 1, 1987).

### j.   Execution of the Consent

When satisfied that the offender understands the conditions of the transfer, the magistrate judge should ask the offender if he or she consents to the transfer subject to those conditions.  If the offender agrees to transfer, the magistrate should "make the necessary inquiries to determine that the offender's consent is voluntary and not the result of any promises, threats, or other improper inducements, and that the offender accepts the transfer subject to the conditions...."[45]  In making this determination, the magistrate judge may direct inquiries not only to the offender, but to any other person, and may consider any documents or other physical evidence.[46]

After completing the inquiries, the magistrate judge should make a specific finding on the record that the offender's consent is voluntary and with full knowledge of the consequences thereof.

Before the offender signs the consent form, the magistrate judge should explain that the form also requires the offender to certify that:

(1)   the offender has been advised of the right to consult with counsel, and has been afforded the opportunity for such consultation prior to giving consent to transfer;

(2)   the offender has been advised that if he or she is financially unable to obtain counsel, one would be appointed for him or her under the laws of the United States free of charge; and

(3)   the offender's consent to transfer is wholly voluntary and not the result of any promises, threats, coercion, or other improper inducements.

The magistrate judge should read each of the three conditions as stated on the consent form and ask the offender if he or she understands and agrees with

---

45.   18 U.S.C. § 4107(d) and 4108(d) (1994).  *See generally Pfeifer v. U.S. Bureau of Prisons*, 468 F. Supp. 920, 925 (S.D. Calif. 1979) ("The threat of continued Mexican incarceration ..., is not the kind of 'duress' that invalidates [an offender's] consent."), *aff'd*, 615 F.2d 873 (9th Cir.), *cert. denied*, 447 U.S. 908 (1980); *Boyden v. Bell*, 631 F.2d 120, 123 (9th Cir. 1980) (allegations of duress caused by conditions of confinement would not support a finding that transfer was involuntary), *cert. denied*, 454 U.S. 1051 (1981).

46.   House Report, *supra* note 14, at 37; Senate Report, *supra* note 14, at 25-26.

them. If the offender responds affirmatively, the magistrate judge should direct the offender to sign each original copy of the consent form.[47]

### k.    Verification of the Consent

After the offender has signed the consent form, the magistrate judge must sign each original form twice. ~~ONCE~~ The magistrate judge's first signature attests to the offender's signature on the form. The magistrate judge's second signature attests to the magistrate judge's finding that the offender's "consent was knowingly and understandingly given and is wholly voluntary and not the result of any promises, threats, coercion, or other improper inducements."

After signing the form, the magistrate judge should affix an official seal to each original copy of the form.[48]

### § 9.    Disposition of the Records

### a.    Cassette Tape Recording

The Attorney General is directed to maintain custody of the records of the consent verification proceeding.[49] At the conclusion of the proceeding, the tape recording should be given to a representative of the Department of Justice, if one is present at the proceeding, or sent immediately thereafter to the Office of Enforcement Operations of the Department of Justice.

### b.    Consent Forms and Other Court Records

One original signed consent form should be retained as an official court record and promptly transmitted to the clerk of the magistrate judge's district court. The transmittal to the clerk should also include the original case file, including the magistrate judge's order appointing counsel for the offender, and any other papers relevant to the proceeding.

---

47.    A total of three original or certified copies of the consent form will be needed. [See section 9(b), *infra*.] When English language forms are used for a foreign speaking offender, the record should reflect that the magistrate judge carefully explained the form to the offender through the interpreter. When Spanish or French language forms are used for a foreign-speaking offender, the Department of Justice has recommended that the offender sign both the English and the appropriate foreign language forms. This procedure requires a total of six original or certified copies - three in English and three in the foreign language.

48.    28 U.S.C. § 638(c) (1994).

49.    18 U.S.C. §§ 4107(e) and 4108(e) (1994).

17

One original or certified copy of the signed consent form should be given to the Bureau of Prisons' representative at the hearing who puts it in the prison file which is transferred with the offender.

A third original or certified copy of the signed consent form should be given to a representative of the Department of Justice, if one is present at the proceeding, or forwarded with the tape recording of the proceeding to the Office of Enforcement Operations of the Department of Justice.

If a state prisoner is being transferred, it may be necessary to provide a fourth original or certified copy of the signed consent form to the state representative, if one is present at the proceeding.

## § 10. Return of a Transferred Offender

If a court of the United States determines that the transfer of an offender to the United States was not in accordance with the treaty or the laws of the United States and orders the offender's release, the offender may be returned to the transferring country if that country requests his or her return.[50]

The procedures to return a transferred offender correspond generally to those utilized in extradition proceedings.[51] In fact, sections 3186, 3188-3191, and 3195 of title 18, which pertain to extradition, are specifically applicable to the return of an offender.[52]

Upon receiving a request from the sentencing country for the return of an offender ordered released, the Attorney General may file a complaint for the return of the individual with any justice or judge of the United States or any authorized magistrate judge within whose jurisdiction the offender is found.[53]  At that point,

---

50.    18 U.S.C. § 4114(a) (1994).  *Cf. Tavarez v. United States Attorney General*, 668 F.2d 805 (5th Cir. 1982) (holding that a person apprehended as an escapee from a foreign prison after transfer may be returned to the foreign nation without further judicial proceedings after he is given a reasonable opportunity to consult with counsel and to file a petition for a writ of habeas corpus).

51.    House Report, *supra* note 14, at 40;  Senate Report, *supra* note 14, at 28.  "However, an extradition treaty is not required, . . . the conviction substitutes for probable cause; and an offender returned is subject to the jurisdiction of the country to which he is returned."  *Id.*

52.    18 U.S.C. § 4114(f) (1994).

53.    18 U.S.C. § 4114(b) (1994).

a summons or warrant should be issued ordering the offender to appear or to be brought before the issuing authority.

If the judicial officer finds that the person brought before the court is the offender described in the complaint and that the facts alleged in the complaint are true, the judicial officer shall issue a warrant for the commitment of the offender to the custody of the Attorney General until the surrender can be made.[54]

An offender whose return is sought pursuant to 18 U.S.C. § 4114 may be admitted to bail or be released on his or her own recognizance at any stage of the proceedings.[55]

---

54.   *Id.*

55.   18 U.S.C. § 4114(g) (1994).

# TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE UNITED MEXICAN STATES ON THE EXECUTION OF PENAL SENTENCES

The United States of America and the United Mexican States, desiring to render mutual assistance in combatting crime insofar as the effects of such crime extend beyond their borders and to provide better administration of justice by adopting methods furthering the offender's social rehabilitation, have resolved to conclude a Treaty on the execution of penal sentences and, to that end, have named their plenipotentiaries Joseph John Jova, Ambassador Extraordinary and Plenipotentiary by the President of the United States of America and Alfonso Garcia Robles, Secretary of Foreign Relations by the President of the United Mexican States.

Who, having exchanged their full powers and having found them in proper and due form, have agreed on the following Articles:

## ARTICLE I

(1) Sentence imposed in the United Mexican States on nationals of the United States of America may be served in penal institutions or subject to the supervision of the authorities of the United States of America in accordance with the provision of this Treaty.

(2) Sentences imposed in the United States of America on nationals of the United Mexican States may be served in penal institutions or subject to the supervision of the authorities of the United Mexican States in accordance with the provision of this Treaty.

## ARTICLE II

This treaty shall apply only subject to the following conditions:

(1) That the offense for which the offender was convicted and sentenced is one which would also be generally punishable as a crime in the receiving State, provided, however, that this condition shall not be interpreted so as to require that the crimes described in the laws of the two States be identical in such matters not affecting the character of the crimes such as the quantity of property or money taken or possessed or the presence of interstate commerce.

(2) That the offender must be a national of the Receiving State.

(3) That the offender not be a domiciliary of the Transferring State.

(4) That the offense not be a political offense within the meaning of the Treaty of Extradition of 1899 between the parties, nor an offense under the immigration or the purely military laws of a party.

1

(5) That at least six months of the offender's sentence remains to be served at the time of the petition.

(6) That no proceeding by way of appeal or of collateral attack upon the offender's conviction of sentence be pending in the Transferring State and that the prescribed time for appeal of the offender's conviction or sentence has expired.

## ARTICLE III

Each State shall designate an authority to perform the function provided in this Treaty.

## ARTICLE IV

(1) Every transfer under the Treaty shall be commenced by the Authority of the Transferring State. Nothing in this Treaty shall prevent an offender from submitting a request to the Transferring State for consideration of his transfer.

(2) If the Authority of the Transferring State finds the transfer of an offender appropriate, and if the offender gives his express consent for his transfer, said Authority shall transmit a request for transfer, through diplomatic channels, to the Authority of the Receiving State.

(3) If the Authority of the Receiving State approves the request, it shall promptly so inform the Transferring State and shall initiate the necessary procedures to effect the transfer of the offender. If it does not approve the request, it shall so notify promptly the Authority of the Transferring State.

(4) In deciding upon the transfer of an offender the Authority of each Party shall bear in mind all factors bearing upon the probability that the transfer will contribute to the social rehabilitation of the offender, including the nature and severity of his offense and his previous criminal record, if any, his medical condition, the strength of his connections by residence, presence in the territory, family relations and otherwise to the social life of the Transferring State and the Receiving State.

(5) If the offender was sentenced by the courts of a state of one of the Parties, the approval of the authorities of that state, as well as that of the Federal Authority, shall be required. The Federal Authority of the Receiving State shall, however, be responsible for the custody of the transferred offender.

(6) No offender shall be transferred unless either the sentence which he is serving has a specified duration, or such a duration has subsequently been fixed by the appropriate administrative authorities.

(7) The Transferring State shall furnish the Receiving State a statement showing the offense of which the offender was convicted, the duration of the sentence, the length of time already served by the prisoner and any credits to which the offender is entitled, such as, but not limited to, work done, good behavior or pretrial confinement. Such statement shall be translated into the language of the Receiving State and duly authenticated. The Transferring State shall also furnish the Receiving State a certified copy of the sentence handed down by the competent judicial authority and any modifications thereof. It shall also furnish additional information that might be useful to the Authority of the Receiving State in determining the treatment of the convict with a view of his social rehabilitation.

(8) If the Receiving State considers that the documents supplied by the Transferring State do not enable it to implement this Treaty, it may request additional information.

(9) Each Party shall take the necessary legislative measures and, where required, shall establish adequate procedures, to give for the purposes of this Treaty, legal effect, within its territory to sentences pronounced by courts of the other Party.

## ARTICLE V

(1) Delivery of the offender by the authorities of the Transferring State to those of the Receiving State shall occur at a place agreed upon by both parties. The Transferring State shall afford an opportunity to the Receiving State, if it so desires, to verify, prior to the transfer, that the offender's consent to the transfer is given voluntarily and with full knowledge of the consequences thereof, through the officer designated by the laws of the Receiving State.

(2) Except as otherwise provided in this Treaty, the completion of a transferred offender's sentence shall be carried out according to the laws and procedures of the Receiving State, including the application of any provisions for reduction of the term of confinement by parole, conditional release or otherwise. The Transferring State shall, however, retain the power to pardon or grant amnesty to the offender and the Receiving State shall, upon being advised of such pardon or amnesty, release the offender.

(3) No sentence of confinement shall be enforced by the Receiving State in such a way as to extend its duration beyond the date at which it would have terminated according to the sentence of the court of the Transferring State.

(4) The Receiving State shall not be entitled to any reimbursement for the expenses incurred by it in the completion of the offender's sentence.

(5) The Authorities of each party shall, every six months, exchange reports indicating the status of confinement of all offenders transferred under this Treaty, including in particular the parole or release of any offender. Either Party may, at any time, request a special report on the status of the execution of an individual sentence.

3

(6) The fact that an offender has been transferred under the provisions of this Treaty shall not prejudice his civil rights in the Receiving State in any way beyond those ways in which the fact of his conviction in the Transferring State by itself effects such prejudice under the laws of the Receiving State or any State thereof.

## ARTICLE VI

The Transferring State shall have exclusive jurisdiction over any proceedings, regardless of their form, intended to challenge, modify or set aside sentences handed down by its courts. The Receiving State shall, upon being advised by the Transferring State of action affecting the sentence, take the appropriate action in accordance with such advice.

## ARTICLE VII

An offender delivered for execution of a sentence under this Treaty may not be detained, tried or sentenced in the Receiving State for the same offense upon which the sentence to be executed is based. For purposes of this Article, the Receiving State will not prosecute for any offense the prosecution of which would have been barred under the law of that State, if the sentence had been imposed by one of its courts, federal or state.

## ARTICLE VIII

(1) This Treaty may also be applicable to persons subject to supervision or other measures under the laws of one of the Parties relating to youthful offenders. The Parties shall, in accordance with their laws, agree to the type of treatment to be accorded such individuals upon transfer. Consent for the transfer shall be obtained from the legally authorized person.

(2) By special agreement between the Parties, persons accused of an offense but determined to be of unsound mental condition may be transferred for care in institutions in the country of nationality.

(3) Nothing in this Treaty shall be interpreted to limit the ability which the Parties may have, independent of the present Treaty, to grant or accept the transfer of youthful or other offenders.

## ARTICLE IX

For the purposes of this Treaty—

(1) "Transferring State" means the party from which the offender is to be transferred.

(2) "Receiving State" means the party to which the offender is to be transferred.

4

(3)  "Offender" means a person who, in the territory of one of the parties, has been convicted of a crime and sentenced either to imprisonment or to a term of probation, parole, suspended sentence, or any other form of supervision or conditional sentence without confinement.

(4)  A "domicilary" means a person who has been present in the territory of one of the parties for at least five years with an intent to remain permanently therein.

## ARTICLE X

(1)  This Treaty is subject to ratification.  The exchange of ratifications shall take place in Washington.

(2)  This Treaty shall enter into force thirty days after the exchange of ratifications and shall remain in force three years.

(3)  Should neither contracting party have notified the other ninety days before the three-year period mentioned in the preceding paragraph has expired of its intention to let the Treaty terminate, the Treaty shall remain in force for another three years, and so on every three years.

Done at Mexico City in duplicate, this twenty-fifth day of November, one thousand nine hundred seventy six, in the English and Spanish languages, each texts of which shall be equally authentic.

FOR THE UNITED STATES OF AMERICA:

/s/ Joseph John Java

FOR THE MEXICAN STATES:

/s/ Alfonso Garcia Robles

# TREATY BETWEEN THE UNITED STATES OF AMERICA AND CANADA ON THE EXECUTION OF PENAL SENTENCES

The Government of the United States of America and the Government of Canada,

Desiring to enable Offenders, with their consent, to serve sentences of imprisonment or parole or supervision in the country of which they are citizens, thereby facilitating their successful reintegration into society;

Have agreed as follows:

## ARTICLE I

For the purpose of this Treaty:

(a) "Sending State" means the Party from which the Offender is to be transferred;

(b) "Receiving State" means the Party to which the Offender is to be transferred;

(c) "Offender" means a person who, in the territory of either Party, has been convicted of a crime and sentenced either to imprisonment or to a term of probation, parole, conditional release or other form of supervision without confinement. The term shall include persons subject to confinement, custody or supervision under the laws of the Sending State respecting juvenile offenders; and

(d) "Citizen" includes an Offender who may be a dual national of the Parties and in the case of the United States also includes nationals.

## ARTICLE II

The application of this Treaty shall be subject to the following conditions:

(a) That the offense for which the Offender was convicted and sentenced is one which would also be punishable as a crime in the Receiving State. This condition shall not be interpreted so as to require that the crimes described in the laws of the two Parties be identical in such matters not affecting the character of the crimes as the quantity of property or money taken or possessed or the presence of interstate commerce.

(b) That the Offender is a citizen of the Receiving State.

(c) That the offense is not an offense under the immigration laws or solely against the military laws of a Party.

(d) That there is at least six months of the Offender's sentence remaining to be served

at the time of his application.

(e) That no proceeding by way of appeal or of collateral attack upon the Offender's conviction or sentence be pending in the Sending State and that the prescribed time for appeal of the Offender's conviction or sentence has expired.

## ARTICLE III

1. Each Party shall designate an authority to perform the functions provided in this Treaty.

2. Each Party shall inform an Offender, who is within the scope of the present Treaty, of the substance of the Treaty.

3. Every transfer under this Treaty shall be commenced by a written application submitted by the Offender to the authority of the Sending State. If the authority of the Sending State approves, it will transmit the application, together with its approval, through diplomatic channels to the authority of the Receiving State.

4. If the authority of the Receiving State concurs, it will so inform the Sending State and initiate procedures to effectuate the transfer of the Offender at its own expense. If it does not concur, it will promptly advise the authority of the Sending State.

5. If the Offender was sentenced by the courts pursuant to the laws of a state or province of one of the Parties, the approval of the authorities of that state or province, as well as that of the federal authority, shall be required. The federal authority of the Receiving State shall be responsible for the custody of the transferred Offender.

6. In deciding upon the transfer of an Offender, the authority of each Party shall bear in mind all factors bearing upon the probability that transfer will be in the best interests of the Offender.

7. No Offender shall be transferred unless:

(a) he is under a sentence of imprisonment for life; or

(b) the sentence which he is serving states a definite termination date, or the authorities authorized to fix such a date have so acted; or

(c) he is subject to confinement, custody or supervision under the laws of the Sending State respecting juvenile offenders; or

(d) he is subject to indefinite confinement as a dangerous or habitual offender.

2

8. The Sending State shall furnish to the Receiving State a statement showing the offense of which the Offender was convicted, the termination date of the sentence, the length of time already served by the prisoner and any credits to which the Offender is entitled on account of work done, good behavior or pretrial confinement. Where requested by the Receiving State a translation shall be provided.

9. Each Party shall establish by legislation or regulation the procedures necessary and appropriate to give legal effect within its territory to sentences pronounced by courts of the other Party and each Party agrees to cooperate in the procedures established by the other Party.

10. Delivery of the Offender by the authorities of the Sending State to those of the Receiving State shall occur at a place agreed upon by both Parties. The Sending State shall afford an opportunity to the Receiving State, if it so desires, to verify, prior to the transfer, that the Offender's consent to the transfer is given voluntarily and with full knowledge of the consequences thereof, through the officer designated by the laws of the Receiving State.

## ARTICLE IV

1. Except as otherwise provided in this Treaty, the completion of a transferred Offender's sentence shall be carried out according to the laws and procedures of the Receiving State, including the application of any provisions for reduction of the term of confinement by parole, conditional release or otherwise. The Sending State shall, in addition, retain a power to pardon the Offender and the Receiving State shall, upon being advised of such pardon, release the Offender.

2. The Receiving State may treat under its laws relating to youthful offenders any Offender so categorized under its laws regardless of his status under the laws of the Sending State.

3. No sentence of confinement shall be enforced by the Receiving State in such a way as to extend its duration beyond the date at which it would have terminated according to the sentence of the court of the Sending State.

4. The Receiving State shall not be entitled to any reimbursement from the Sending State for the expenses incurred by it in the completion of the Offender's sentence.

5. The authorities of each Party shall at the request of the other Party provide reports indicating the status of all Offenders transferred under this Treaty, including in particular the parole or release of any Offender. Either Party may, at any time, request a special report on the status of the execution of an individual sentence.

6. The transfer of an Offender under the provisions of this Treaty shall not create any additional disability under the laws of the Receiving State or any State or province thereof

3

beyond those which the fact of his conviction may in and of itself already have created.

## ARTICLE V

Each Party shall regulate by legislation the extent, if any, to which it will entertain collateral attacks upon the convictions or sentences handed down by it in the cases of Offenders who have been transferred by it. Upon being informed by the Sending State that the conviction or sentence has been set aside or otherwise modified, the Receiving State shall take appropriate action in accordance with such information. The Receiving State shall have no jurisdiction over any proceedings, regardless of their form, intended to challenge, set aside or otherwise modify convictions or sentences handed down in the Sending State.

## ARTICLE VI

An Offender delivered for execution of a sentence under this Treaty may not be detained, tried or sentenced in the Receiving State for the same offense upon which the sentence to be executed is based. For purpose of this Article, the Receiving State will not prosecute for any offense the prosecution of which would have been barred under the law of that State, if the sentence had been imposed by a court, Federal, State, or provincial, of the Receiving State.

## ARTICLE VII

If either Party enters into an agreement for the transfer of sanctions with any other State, the other Party shall cooperate in facilitating the transit through its territory of Offenders being transferred pursuant to such agreement. The Party intending to make such a transfer will give advance notice to the other Party of such transfer.

## ARTICLE VIII

1. This Treaty shall be subject to ratification and shall enter into force on the date on which instruments of ratification are exchanged. The exchange of instruments of ratification shall take place at Ottawa as soon as possible.

2. The present Treaty shall remain in force for three years from the date upon which it enters into force. Thereafter, the Treaty shall continue in force until thirty days from the date upon which either Party gives written notice to the other Party of its intention to terminate the Treaty.

IN WITNESS THEREOF the undersigned, being duly authorized by their respective Governments, have signed the present Treaty.

DONE in duplicate, in the English and French languages, each language version being equally authentic, at Washington this second of March, 1977.

4

For the Government of the United States of America:

/s/Griffin B. Bell.

For the Government of Canada:

/s/Francis Fox.

## CONVENTION ON THE TRANSFER OF SENTENCED PERSONS

The member States of the Council of Europe and the other States, signatory hereto,

Considering that the aim of the Council of Europe is to achieve a greater unity between its Members;

Desirous of further developing international co-operation in the field of criminal law;

Considering that such co-operation should further the ends of justice and the social rehabilitation of sentenced persons;

Considering that these objectives require that foreigners who are deprived of their liberty as a result of their commission of a criminal offence should be given the opportunity to serve their sentences within their own society; and

Considering that this aim can best be achieved by having them transferred to their own countries.

Have agreed as follows:

### Article 1

#### *Definitions*

For the purposes of this Convention:

(a)    "sentence" means any punishment or measure involving deprivation of liberty ordered by a court for a limited or unlimited period of time on account of a criminal offence;

(b)    "judgment" means a decision or order of a court imposing a sentence;

(c)    "sentencing State" means the State in which the sentence was imposed on the person who may be, or has been, transferred;

(d)    "administering State" means the State to which the sentenced person may be, or has been, transferred in order to serve his sentence.

### Article 2

#### *General principles*

1.    The Parties undertake to afford each other the widest measure of co-operation in respect of the transfer of sentenced persons in accordance with the provisions of this Convention.

2.    A person sentenced in a Party may be transferred to another Party, in accordance with the provisions of this Convention, in order to serve the sentence imposed on him. To that end, he may express his interest to the sentencing State or to the administering State in being transferred under this Convention.

3.    Transfer may be requested by either the sentencing State or the administering State.

## Article 3

### *Conditions for transfer*

1.   A sentenced person may be transferred under this Convention only on the following conditions:

      (a)   if that person is a national of the administering State;

      (b)   if the judgment is final;

      (c)   if, at the time of receipt of the request for transfer, the sentenced person still has at least six months of the sentence to serve or if the sentence is indeterminate;

      (d)   if the transfer is consented to by the sentenced person or, where in view of his age or his physical or mental condition one of the two States considers it necessary, by the sentenced person's legal representative;

      (e)   if the acts or omissions on account of which the sentence has been imposed constitute a criminal offence according to the law of the administering State or would constitute a criminal offence if committed on its territory; and

      (f)   if the sentencing and administering States agree to the transfer.

2.   In exceptional cases, Parties may agree to a transfer even if the time to be served by the sentenced person is less than that specified in paragraph 1.c.

3.   Any State may, at the time of signature or when depositing its instrument of ratification, acceptance, approval or accession, by a declaration addressed to the Secretary General of the Council of Europe, indicate that it intends to exclude the application of one of the procedures provided in Article 9.1.a and b in its relations with other Parties.

4.   Any State may, at any time, by a declaration addressed to the Secretary General of the Council of Europe, define, as far as it is concerned, the term "national" for the purposes of this Convention.

## Article 4

### *Obligation to furnish information*

1.   Any sentenced person to whom this Convention may apply shall be informed by the sentencing State of the substance of this Convention.

2.   If the sentenced person has expressed an interest to the sentencing State in being transferred under this Convention, that State shall so inform the administering State as soon as practicable after the judgment becomes final.

3.   The information shall include:

      (a)   the name, date and place of birth of the sentenced person;

      (b)   his address, if any, in the administering State;

      (c)   a statement of the facts upon which the sentence was based;

      (d)   the nature, duration and date of commencement of the sentence.

4.   If the sentenced person has expressed his interest to the administering State, the sentencing State shall, on request, communicate to that State the information referred to in paragraph 3 above.

5.   The sentenced person shall be informed, in writing, of any action taken by the sentencing State or the administering State under the preceding paragraphs, as well as of any decision taken by either State on a request for transfer.

## Article 5

### Requests and replies

1.   Requests for transfer and replies shall be made in writing.

2.   Requests shall be addressed by the Ministry of Justice of the requesting State to the Ministry of Justice of the requested State. Replies shall be communicated through the same channels.

3.   Any Party may, by a declaration addressed to the Secretary General of the Council of Europe, indicate that it will use other channels of communication.

4.   The requested State shall promptly inform the requesting State of its decision whether or not to agree to the requested transfer.

## Article 6

### Supporting documents

1.   The administering State, if requested by the sentencing State, shall furnish it with:

(a)   a document or statement indicating that the sentenced person is a national of that State;

(b)   a copy of the relevant law of the administering State which provides that the acts or omissions on account of which the sentence has been imposed in the sentencing State constitute a criminal offence according to the law of the administering State, or would constitute a criminal offence if committed on its territory;

(c)   a statement containing the information mentioned in Article 9.2.

2.   If a transfer is requested, the sentencing State shall provide the following documents to the administering State, unless either State has already indicated that it will not agree to the transfer:

(a)   a certified copy of the judgment and the law on which it is based;

(b)   a statement indicating how much of the sentence has already been served, including information on any pre-trial detention, remission, and any other factor relevant to the enforcement of the sentence;

(c)   a declaration containing the consent to the transfer as referred to in Article 3.1.d; and

(d)   whenever appropriate, any medical or social reports on the sentenced person, information about his treatment in the sentencing State, and any recommendation for his further treatment in the administering State.

3.   Either State may ask to be provided with any of the documents or statements referred to in paragraphs 1 or 2 above before making a request for transfer or taking a decision on whether or not to agree to the transfer.

## Article 7

### Consent and its verification

1.   The sentencing State shall ensure that the person required to give consent to the transfer in accordance with Article 3.1.d does so voluntarily and with full knowledge of the legal consequences thereof.  The procedure for giving such consent shall be governed by the law of the sentencing State.

2.   The sentencing State shall afford an opportunity to the administering State to verify, through a consul or other official agreed upon with the administering State, that the consent is given in accordance with the conditions set out in paragraph 1 above.

## Article 8

### Effect of transfer for sentencing State

1.   The taking into charge of the sentenced person by the authorities of the administering State shall have the effect of suspending the enforcement of the sentence in the sentencing State.

2.   The sentencing State may no longer enforce the sentence if the administering State considers enforcement of the sentence to have been completed.

## Article 9

### Effect of transfer for administering State

1.   The competent authorities of the administering State shall:

(a)   continue the enforcement of the sentence immediately or through a court or administrative order, under the conditions set out in Article 10, or

(b)   convert the sentence, through a judicial or administrative procedure, into a decision of that State, thereby substituting for the sanction imposed in the sentencing State a sanction prescribed by the law of the administering State for the same offence, under the conditions set out in Article 11.

2.   The administering State, if requested, shall inform the sentencing State before the transfer of the sentenced person as to which of these procedures it will follow.

3.   The enforcement of the sentence shall be governed by the law of the administering State and that State alone shall be competent to take all appropriate decisions.

4

4.   Any State which, according to its national law, cannot avail itself of one of the procedures referred to in paragraph 1 to enforce measures imposed in another Party on sentenced persons who for reasons of mental condition have been held not criminally responsible for the commission of the offence, and which is prepared to receive such persons for further treatment may, by way of a declaration addressed to the Secretary General of the Council of Europe, indicate the procedures it will follow in such cases.

### Article 10

#### *Continued enforcement*

1.   In the case of continued enforcement, the administering State shall be bound by the legal nature and duration of the sentence as determined by the sentencing State.

2.   If, however, this sentence is by its nature or duration incompatible with the law of the administering State, or its law so requires, that State may, by a court or administrative order, adapt the sanction to the punishment or measure prescribed by its own law for a similar offence. As to its nature, the punishment or measure shall, as far as possible, correspond with that imposed by the sentence to be enforced. It shall not aggravate, by its nature or duration, the sanction imposed in the sentencing State, nor exceed the maximum prescribed by the law of the administering State.

### Article 11

#### *Conversion of sentence*

1.   In the case of conversion of sentence, the procedures provided for by the law of the administering State apply. When converting the sentence, the competent authority:

(a)   shall be bound by the findings as to the facts insofar as they appear explicitly or implicitly from the judgment imposed in the sentencing State;

(b)   may not convert a sanction involving deprivation of liberty to a pecuniary sanction;

(c)   shall deduct the full period of deprivation of liberty served by the sentenced person; and

(d)   shall not aggravate the penal position of the sentenced person, and shall not be bound by any minimum which the law of the administering State may provide for the offence or offences committed.

2.   If the conversion procedure takes place after the transfer of the sentenced person, the administering State shall keep that person in custody or otherwise ensure his presence in the administering State pending the outcome of that procedure.

## Article 12

### *Pardon, amnesty, commutation*

Each Party may grant pardon, amnesty or commutation of the sentence in accordance with its Constitution or other laws.

## Article 13

### *Review of judgment*

The sentencing State alone shall have the right to decide on any application for review of the judgment.

## Article 14

### *Termination of enforcement*

The administering State shall terminate enforcement of the sentence as soon as it is informed by the sentencing State of any decision or measure as a result of which the sentence ceases to be enforceable.

## Article 15

### *Information on enforcement*

The administering State shall provide information to the sentencing State concerning the enforcement of the sentence:

    (a)   when it considers enforcement of the sentence to have been completed;

    (b)   if the sentenced person has escaped from custody before enforcement of the sentence has been completed; or

    (c)   if the sentencing State requests a special report.

## Article 16

### *Transit*

1.   A Party shall, in accordance with its law, grant a request for transit of a sentenced person through its territory if such a request is made by another Party and that State has agreed with another Party or with a third State to the transfer of that person to or from its territory.

2.   A Party may refuse to grant transit:

    (a)   if the sentenced person is one of its nationals, or

(b)    if the offence for which the sentence was imposed is not an offence under its own law.

3.    Requests for transit and replies shall be communicated through the channels referred to in the provisions of Article 5.2 and 3.

4.    A Party may grant a request for transit of a sentenced person through its territory made by a third State if that State has agreed with another Party to the transfer to or from its territory.

5.    The Party requested to grant transit may hold the sentenced person in custody only for such time as transit through its territory requires.

6.    The Party requested to grant transit may be asked to give an assurance that the sentenced person will not be prosecuted, or, except as provided in the preceding paragraph, detained, or otherwise subjected to any restriction on his liberty in the territory of the transit State for any offence committed or sentence imposed prior to his departure from the territory of the sentencing State.

7.    No request for transit shall be required if transport is by air over the territory of a Party and no landing there is scheduled. However, each State may, by a declaration addressed to the Secretary General of the Council of Europe at the time of signature or of deposit of its instrument of ratification, acceptance, approval or accession, require that it be notified of any such transit over its territory.

## Article 17

### *Language and costs*

1.    Information under Article 4, paragraphs 2 to 4, shall be furnished in the language of the Party to which it is addressed or in one of the official languages of the Council of Europe.

2.    Subject to paragraph 3 below, no translation of requests for transfer or of supporting documents shall be required.

3.    Any State may, at the time of signature or when depositing its instrument of ratification, acceptance, approval or accession, by a declaration addressed to the Secretary General of the Council of Europe, require that requests for transfer and supporting documents be accompanied by a translation into its own language or into one of the official languages of the Council of Europe or into such one of these languages as it shall indicate. It may on that occasion declare its readiness to accept translations in any other language in addition to the official language or languages of the Council of Europe.

4.    Except as provided in Article 6.2.a, documents transmitted in application of this Convention need not be certified.

5.    Any costs incurred in the application of this Convention shall be borne by the administering State, except costs incurred exclusively in the territory of the sentencing State.

7

## Article 18

### *Signature and entry into force*

1.   This Convention shall be open for signature by the member States of the Council of Europe and non-member States which have participated in its elaboration. It is subject to ratification, acceptance or approval. Instruments of ratification, acceptance or approval shall be deposited with the Secretary General of the Council of Europe.

2.   This Convention shall enter into force on the first day of the month following the expiration of a period of three months after the date on which three member States of the Council of Europe have expressed their consent to be bound by the Convention in accordance with the provisions of paragraph 1.

3.   In respect of any signatory State which subsequently expresses its consent to be bound by it, the Convention shall enter into force on the first day of the month following the expiration of a period of three months after the date of the deposit of the instrument of ratification, acceptance or approval.

## Article 19

### *Accession by non-member States*

1.   After the entry into force of this Convention, the Committee of Ministers of the Council of Europe, after consulting the Contracting States, may invite any State not a member of the Council and not mentioned in Article 18.1 to accede to this Convention, by a decision taken by the majority provided for in Article 20.d of the Statute of the Council of Europe and by the unanimous vote of the representatives of the Contracting States entitled to sit on the Committee.

2.   In respect of any acceding State, the Convention shall enter into force on the first day of the month following the expiration of a period of three months after the date of deposit of the instrument of accession with the Secretary General of the Council of Europe.

## Article 20

### *Territorial application*

1.   Any State may at the time of signature or when depositing its instrument of ratification, acceptance, approval or accession, specify the territory or territories to which this Convention shall apply.

2.   Any State may at any later date, by a declaration addressed to the Secretary General of the Council of Europe, extend the application of this Convention to any other territory specified in the declaration. In respect of such territory the Convention shall enter into force on the first day of the month following the expiration of a period of three months after the date of receipt of such declaration by the Secretary General.

8

3. Any declaration made under the two preceding paragraphs may, in respect of any territory specified in such declaration, be withdrawn by a notification addressed to the Secretary General. The withdrawal shall become effective on the first day of the month following the expiration of a period of three months after the date of receipt of such notification by the Secretary General.

## Article 21

### Temporal application

This Convention shall be applicable to the enforcement of sentences imposed either before or after its entry into force.

## Article 22

### Relationship to other Conventions and Agreements

1. This Convention does not affect the rights and undertakings derived from extradition treaties and other treaties on international co-operation in criminal matters providing for the transfer of detained persons for purposes of confrontation or testimony.

2. If two or more Parties have already concluded an agreement or treaty on the transfer of sentenced persons or otherwise have established their relations in this matter, or should they in future do so, they shall be entitled to apply that agreement or treaty or to regulate those relations accordingly, in lieu of the present Convention.

3. The present Convention does not affect the right of States Party to the European Convention on the International Validity of Criminal Judgments to conclude bilateral or multilateral agreements with one another on matters dealt with in that Convention in order to supplement its provisions or facilitate the application of the principles embodied in it.

4. If a request for transfer falls within the scope of both the present Convention and the European Convention on the International Validity of Criminal Judgments or another agreement or treaty on the transfer of sentenced persons, the requesting State shall, when making the request, indicate on the basis of which instrument it is made.

## Article 23

### Friendly settlement

The European Committee on Crime Problems of the Council of Europe shall be kept informed regarding the application of this Convention and shall do whatever is necessary to facilitate a friendly settlement of any difficulty which may arise out of its application.

## Article 24

### *Denunciation*

1.    Any Party may at any time denounce this Convention by means of a notification addressed to the Secretary General of the Council of Europe.

2.    Such denunciation shall become effective on the first day of the month following the expiration of a period of three months after the date of receipt of the notification by the Secretary General.

3.    The present Convention shall, however, continue to apply to the enforcement of sentences of persons who have been transferred in conformity with the provisions of the Convention before the date on which such a denunciation takes effect.

## Article 25

### *Notifications*

The Secretary General of the Council of Europe shall notify the member States of the Council of Europe, the non-member States which have participated in the elaboration of this Convention and any State which has acceded to this Convention of:

(a)    any signature;

(b)    the deposit of any instrument of ratification, acceptance, approval or accession;

(c)    any date of entry into force of this Convention in accordance with Articles 18.2 and 3, 19.2 and 20.2 and 3;

(d)    any other act, declaration, notification or communication relating to this Convention.

In witness whereof the undersigned, being duly authorized thereto, have signed this Convention.

Done at Strasburg, this 21st day of March 1983, in English and French, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Council of Europe. The Secretary General of the Council of Europe shall transmit certified copies to each member State of the Council of Europe, to the non-member States which have participated in the elaboration of this Convention, and to any State invited to accede to it.

10

## IN THE UNITED STATES DISTRICT COURT FOR THE

_____ DISTRICT OF _____

IN THE MATTER OF THE                     )
TRANSFER OF OFFENDERS                     )         NO. _____
Pursuant to 18 U.S.C. § 4100             )
et seq.                                   )

### ORDER

Pursuant to 28 U.S.C. § 636(g), the Honorable _____, a United States

Magistrate Judge for the _____ District of _____, is assigned to perform the

verification proceedings as required by 18 U.S.C. § 4108 commencing on or about

_____, in _____ relating to the proposed transfers of offenders

from _____ to the United States.  He/She is also authorized to assign counsel for the

said offenders as provided in 18 U.S.C. § 4109.

IT IS SO ORDERED.

ENTERED this _____ day of _____, 1992,

at _____, _____ _____

_____
**Chief Judge**